**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| WAYNE J. ADAMS and TERRI L. ADAMS,   )<br>    Plaintiffs,                                                       )<br>                                                                       )<br>    v.                                                                 )<br>                                                                       )<br>WELLS FARGO BANK, N.A. as TRUSTEE FOR        )<br>POOLING AND SERVICING AGREEMENTS           )<br>OPTION ONE MORTGAGE LOAN TRUST 2004-1    )<br>ASSET-BACKED CERTIFICATES, SERIES 2004-1,   )<br>WELLS FARGO BANK, N.A., AS TRUSTEE FOR       )<br>OPTION ONE MORTGAGE LOAN TRUST, 2004-1    )<br>ASSET-BACKED CERTIFICATES SERIES, 2004-1,    )<br>and OCWEN LOAN SERVICING LLC, as ALLEGED )<br>SERVICING AGENT IN FACT, OR OTHERWISE        )<br>ON BEHALF OF WELLS FARGO BANK, N.A.,             )<br>    Defendants.                                                  )<br>                                                                       ) | CIVIL ACTION<br>No. 16-40153-TSH |

**<u>MEMORANDUM OF DECISION AND ORDER PLAINTIFFS' EMERGENCY MOTION</u>**
**<u>TO ENJOIN FORECLOSURE ACTION</u>**
October 26, 2016

**HILLMAN, D.J.**

### Background

Wayne J. Adams and Terri L Adams ("Plaintiffs") have filed a *pro se* Verified Complaint (Docket No. 2) against Wells Fargo Bank, N.A. ("Wells Fargo"), as Trustee for pooling and servicing agreements option one mortgage loan trust 2004-1 asset-backed certificates, series 2004-1, Wells Fargo, as Trustee for option one mortgage loan trust, 2004-1 asset-backed certificates series, 2004-1,and Ocwen Loan Servicing LLC ("Ocwen"), as alleged servicing agent in fact, or otherwise on behalf of Wells Fargo, alleging claims for: Fraud,

Conspiracy, Illegal Debt Collection, Intentional Infliction of Emotional Distress, Slander to Title and Unjust Enrichment.

Wells Fargo holds a mortgage on the Plaintiffs' property located at 57 Fitchburg Road, Ashburnham, Massachusetts (the "Property"). The mortgage, which is dated October 31, 2003, was assigned to Wells Fargo as successor to the original mortgagee, Option One Mortgage Corporation ("Option One"). The mortgage secures a promissory note signed by the Plaintiffs in favor of Option One in the original loan amount of $225,000; Wells Fargo also has possession of the note. Wells Fargo has notified the Plaintiffs of their intent to hold a foreclosure sale on the Property on October 31, 2016. This Order addresses Plaintiffs' Motion For Order Of Short Notice And Emergency Motion To Enjoin Foreclosure Action (Docket No. 6). For the reasons set forth below, the motion is *denied*.[1]

## Facts

On December 3, 1999, Plaintiffs purchased the Property, an approximately forty-four acre farm which includes the family home. In May 2000, the Plaintiffs discovered that thousands of yards of contaminated fill had been intentionally put into a newly installed septic system on the Property and a lawsuit was filed on their behalf. Thereafter, Plaintiffs learned of ongoing drinking well water contamination that had been affecting properties on Fitchburg Road since 1997, which had been attributed to the abutting Boutwell's Garage Citgo station. In January 2003, MTBE (methyl tertiary-butyl ether), a toxic gasoline chemical, was discovered in the Plaintiffs' drinking well water and they notified their lender. The Plaintiffs were referred to a mortgage broker who brokered a mortgage for the Plaintiffs with Option One. On October 31,

---

[1] Since the Plaintiffs' are proceeding *pro se*, the Court is required to construe their pleadings liberally.

2

2003, Plaintiffs obtained a loan from Option One in the amount of $225,000, which was secured by a conventional uninsured adjustable rate mortgage at issue in this case.

The Plaintiff's made their last loan payment to Option One on December 15, 2004 at 11:45 a.m.; at the time that they made the payment, the Plaintiffs were up to date on their loan payments and had never been delinquent. On January 1, 2005, the Plaintiffs exercised their non-judicial right to "Null & Void" the occupancy loan with Option One due to a lack of disclosures required by "Federal Toxic Tort Law and Toxic Predatory Lending." Plaintiffs allege that had Option One made the required disclosures, it would have influenced their decision as to whether to obtain the loan. However, Plaintiffs have not specified the substance of the alleged required disclosures. Plaintiffs further allege that as their "partner in the loan," Option One had a duty to protect its investment by holding third parties (Peterborough Oil Co., Boutwell's Garage, Citgo) responsible for the contamination and cleanup.

Plaintiffs further allege that they could not find Option One's address until February 2005. When they found the address, Plaintiffs served their "Null & Void" along with copies of the Massachusetts Department of Environmental Protection ("DEP's") notices of the contamination. Plaintiffs requested an investigation by Option One. From February 2005 through May 2008, Plaintiffs had contact with legal counsel for Option One, who agreed they were victims of predatory selling and lending and criminal fraud, but claimed "we're just the lender." Plaintiffs claim that Option One would not meet and discuss any reasonable resolution to the issues, leaving them the entire burden of chasing down the responsible parties in order to clean up the contamination.

On August 9, 2006, the Korde & Associates, P.C., law firm ("Korde") sent the Plaintiffs a letter stating that they represent "Wells Fargo Bank N.A., as Trustee for Pooling and Servicing

Agreement Option One Mortgage Loan Trust 2004-1 Asset-Backed Certificates ("Trust"), Series 2004-1 ("Holder'")". Wells Fargo claimed to be the present holder their mortgage to Option One, dated October 31, 2003 in the original principal amount of $225,000.00. Because the Plaintiffs were delinquent in their loan payments, Wells Fargo notified them that it intended to foreclose on the mortgaged property.  On August 11, 2006, about 1½ years after the Plaintiffs unilaterally declared their loan/mortgage with Option One to be null and void, Korde filed a "Complaint to Foreclose Mortgage" in the Massachusetts Land Court.  The Plaintiffs filed a Verified Complaint for Injunctive and Other Equitable Relief in Worcester Superior Court. On December 11, 2006, the defendant filed a motion to dismiss. After a hearing held in February 2007, Korde's attorney informed the Plaintiffs that the foreclosure had been put "on hold, indefinitely" and the Superior Court case was dismissed.

In 2008, Korde recorded an alleged Assignment of Mortgage at the Worcester North Registry of Deeds suggesting that the Plaintiffs' mortgage to Option One had been assigned to Wells Fargo. The alleged assignment occurred over 1½ years after the Plaintiffs had declared their loan/mortgage obligations null and void, and over 2½ years after the Trust closed (January 2004). The alleged assignment was in violation of the material provisions of the Pooling and Servicing Agreement establishing the Trust (because the "Depositor", Option One Mortgage Acceptance Corporation, was the only entity authorized to convey mortgage loans into the Trust). In 2009, Judge Charles W. Trombly, Jr. of the Massachusetts Land Court, issued a Show Cause Order to Wells Fargo requiring it "to submit information and documentation to the Court...attesting to the identity of the current holder of the mortgage...and demonstrating with evidence that [Wells Fargo] has standing to bring and prosecute" the foreclosure action.  On February 3, 2010 Judge Trombly dismissed the action.

In 2012, Ablitt Scofield, P.C., recorded an alleged Assignment of Mortgage at the Worcester North Registry of Deeds in which Wells Fargo assigned the mortgage to itself without reference to the "Pooling and Servicing Agreement" and without assigning the note. The assignment was witnessed and notarized by persons utilizing a "robo-signature". On November 21, 2012, Ablitt Scofield, P.C., filed a "Complaint to Foreclose Mortgage" in the Massachusetts Land Court (presumably on behalf of Wells Fargo).  In 2013, while this second foreclosure proceeding was pending, the Plaintiffs began receiving debt collection notices from Ocwen alleging that effective as of February 2, 2016, Ocwen was servicing their loan.  The Plaintiffs contacted Ocwen multiple times, and informed it that in 2005, they had declared their loan/mortgage with Option One to be null and void and that they had never had a loan with Wells Fargo.  The Plaintiffs also sent Ocwen copies of hundreds of documents describing the "Null & Void", ongoing fraud, no occupancy certificate, DEP letters confirming the contamination of their private water supply, and toxic predatory lending.   Ocwen responded, but did not explain the origin of the loan number it referenced in the documents (Loan Number 714299 8892) it sent to the Plaintiffs, which was not the loan number of their Option One loan.  Ocwen also failed to provide a full accounting for the loan and failed to verify the alleged debt.  Thereafter, Ocwen continued to attempt to collect the debt.  The Plaintiffs served a "No Trespass Notice" on Ocwen pursuant to Massachusetts law and a cease and desist collection notice on it pursuant to federal and state law. In 2015, while the second foreclosure proceeding was pending, Owen sent the Plaintiffs a right to cure letter stating that they had 150 days to cure the mortgage default in reference to "Loan Number 714299 8892."

On October 13, 2015, Ocwen's attorney sent the Plaintiffs a letter that stated: "Please be advised that this office represents Ocwen Loan Servicing, LLC as servicer for Wells Fargo Bank

N.A., as Trustee for Option One Mortgage Loan Trust 2004-1, Asset-Backed Certificates, Series 2004-1 (Holder) the present holder of your mortgage to Option One Mortgage Corporation, dated October 31, 2003 in the original principal amount of $225,000.00. The Holder has brought to our attention your delinquent mortgage account... it is the intention of the Holder to foreclose..." On October 14, 2015, while the second foreclosure proceeding was still pending, Wells Fargo filed a new complaint in the Massachusetts Land Court; Wells Fargo later filed a motion to dismiss the second foreclosure proceeding. On November 16, 2015, the Plaintiffs sent the attorney for Wells Fargo/Ocwen notice that they never had a loan with the number referenced on the paperwork and do not have a mortgage with Wells Fargo. Ocwen acknowledged that the Plaintiffs were disputing the validity of the debt and indicated that it or its legal representative would respond. Neither Ocwen nor its attorney verified the alleged debt. Instead, on December 2, 2015, the Plaintiffs received an "Identity Theft" notice from Ocwen requesting they sign an "ID Theft Affidavit" and instructing them not to send the Affidavit to the "FTC OR ANY OTHER GOVERNMENT AGENCY". The Plaintiffs called the attorney for Wells Fargo/Ocwen in December 16, 2015 and were told that the foreclosure proceedings were on hold. From January–April 2016, Ocwen sent the Plaintiffs a series of letters regarding an alleged loan, including a letter stating that they were approved to enter into a trial period plan under the Home Affordable Modification Program.

     On May 9, 2016, the Plaintiffs sent a Motion to Dismiss the third foreclosure proceeding via priority mail to the Suffolk County Sheriff's office, requesting the motion to be served, in-hand, to the Land Court Chief Justice; the online tracking stated: "Your item was undeliverable as addressed at 3:15 p.m. on May 11, 2016 in Boston, MA 02114. It is being returned if appropriate information is available." On May 13, 2016, a judgment in favor of Wells Fargo was

6

entered in the third foreclosure proceeding. On May 20, 2016, the Plaintiffs hand-delivered a duplicate set of their May 9, 2016 documents to the Suffolk County Sheriff's office along with a Motion for Reconsideration; both the May 9th and May 20th documents were served via Sheriff to Land Court Chief Justice Judith C. Cutler in-hand to Jill Quigley, Clerk on 5/25/2016 at 11:22 a.m.  Both the May 9th and May 20th documents were then returned by the Massachusetts Land Court with a notice that they were not accepted for filing.

On June 9, 2016, Ocwen sent the Plaintiffs a "Notice of Foreclosure Postponement For Loss Mitigation Evaluation", indicating a new foreclosure date of August 8, 2016.  The Plaintiffs made multiple calls to Ocwen, and were told to "send documents to the research department." On September 14, 2016, Ocwen again sent the Plaintiffs a "Notice of Foreclosure Postponement For Loss Mitigation Evaluation", indicating a new foreclosure date of October 31, 2016. Ocwen continued sending statements and delinquency notices, most recently on October 3, 2016, alleging that they had been delinquent on their mortgage loan since January 2, 2005.  On October 18, 2016, the Plaintiffs received a deficiency notice via certified mail sent September 29, 2016 indicating Wells Fargo's intention to foreclose on October 31, 2016. Included with the intention to foreclose notice was a "Certificate Relative to Foreclosing Party's Right to Foreclose" allegedly signed on November 23, 2015 by an Ocwen manager. Attached to the notice was a copy of the original promissory note secured by the mortgage. The Certificate was not notarized and was not sworn to the accuracy of the documents and the loan and servicing numbers on the note were blacked out.  The note was signed by the Plaintiffs. The Defendants and their attorney have refused Plaintiffs request for a face to face meeting.

## Discussion

Plaintiffs have characterized their filing as a "Motion for Order of Short Notice and Emergency Motion To Enjoin Foreclosure Auction."  It does not appear that they have served

7

notice of the motion on either Defendant. Construing their papers liberally, I will assume that they are seeking a temporary restraining order ("TRO"), without notice pursuant to Fed.R.Civ.P. 65 (b)(1)[2]. In evaluating a motion for a temporary restraining order, the Court considers the same four factors that apply to a motion for preliminary injunction, that is: the likelihood the movant will succeed on the merits, whether the movant is likely to suffer irreparable harm in the absence preliminary relief, the balance of equities, and whether an injunction is in the public interest. *Voice Of The Arab World, Inc. v. MDTV Medical News Now*, *Inc.*, 645 F.3d 26, 32 (1st Cir. 2011). While all four factors must be weighed, the moving party's likelihood of success on the merits is "the touchstone of the preliminary injunction inquiry." *Philip Morris, Inc. v. Harshbarger*, 159 F.3d 670, 674 (1st Cir.1998). "[I]f the moving party *cannot* demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *Maine Educ. Ass'n*, 695 F.3d at 152 (quoting *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir.2002)) (emphasis added). The moving party bears the burden of proof for each of these four factors. *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003).

In order to satisfy the first factor, *i.e.,* a likelihood of success on the merits, Plaintiffs must establish that they are likely to prevail on one or more of their claims. Based on their allegations in the Complaint, Plaintiffs have failed to meet this burden. First, Plaintiffs continually reference the fact that they declared the mortgage and loan "Null & Void." However, they have not cited to any legal authority giving which would give them a right to

---

[2] Rule 65(b)(1) provides that a TRO may be issued without notice to the adverse party or its attorney if (1) the specific facts in the affidavit or a verified complaint clearly show that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard, *and* (2) the movant certifies in writing any efforts to give notice and the reasons why it should not be required. I do not find that Plaintiffs have met their burden of establishing that notice to the Defendants was not required in this case. For that reason alone, their motion for TRO must be denied. Nonetheless, I will address whether Plaintiffs have established their right to a TRO on the merits.

unilaterally rescind the loan (and keep the money).  Moreover, the basis for their unilateral rescission of the loan is alleged to be Option One's lack of disclosures required by "Federal Toxic Tort Law and Toxic Predatory Lending," which, if made, would have altered their decision in regards to "buying and borrowing."  Plaintiffs have not identified what, if any, disclosures Option One failed to make.  Plaintiffs have also failed to cite to any statute or regulation which require would have required Option One to make any disclosures regarding any environmental problems before accepting the Property as security for the loan.   Even if I assume that Option One had such an obligation, (1) Plaintiffs have not alleged that Option One was aware of the alleged contamination; and (2) Plaintiffs own factual allegations make clear that they were independently aware of the contamination when they obtained the loan.  Additionally, the extent that the Plaintiffs' allegations can be read to assert a claim for predatory lending, the factual allegations do not support a finding that Option One made the loan knowing that because the environmental contamination, they would be unable to repay it. Plaintiffs also suggest that by giving them a loan and accepting the Property as security, Option One (and presumably its assignee, Wells Fargo) became "partners" with them and had a duty to protect their investment by pursuing those third parties responsible for the contamination and clean-up of the Plaintiffs' drinking water. However, Plaintiffs have not cited any authority for their extraordinary proposition that a mortgagee has a legal *obligation* to step in and pursue such claims.

      Plaintiffs assert claims attacking the validity of the assignment of the note and mortgage from Option One to Wells Fargo.  For example, they allege that the transfers were made in violation of the pooling and servicing agreements, that the signatures were not properly notarized and that the signatures were "robo-signed." However, courts, including this one, have routinely rejected similar challenges. *See Butler v. Deutsche Bank Trust Co. Americas,* 748 F3d  28 (1st

Cir. 2014)(under Massachusetts law acts of trustee in contravention of trust may be ratified, and are thus voidable and therefore, mortgagor lacks standing to challenge mortgage holder's possession; allegation of robo-signing even if true, does not undermine validity of mortgage assignment).

I find that the Plaintiffs have failed to establish a likelihood of success on the merits as to those claims which could arguably undermine the validity of the foreclosure proceeding.[3] This essentially ends the inquiry, although for the record, I also find that while the Plaintiffs have established irreparable harm should the foreclosure go forward, they have not established that the equities are in their favor[4] or that public policy favors the issuance of a TRO. For the reasons set forth above, Plaintiffs' motion is denied.

## Conclusion

The Motion For Order Of Short Notice And Emergency Motion To Enjoin Foreclosure Action (Docket No. 6) is ***denied***.

*/s/ Timothy S. Hillman*
TIMOTHY S. HILLMAN
DISTRICT JUDGE

---

[3] Even if the Court were to find that the Plaintiffs were to likely prevail on their claims for intentional infliction of emotional distress, illegal debt collection and the like, success on such claims would entitle the Plaintiffs to monetary damages, but would not entitle them to enjoin the foreclosure proceedings.

[4] I will note that where a mortgagor has failed to make any payments on the loan for a lengthy period, there are courts that have held that the mortgagor had "unclean hands" and is barred from seeking equitable relief from the Court in the form of a preliminary injunction. *See Durmic v. J.P. Morgan Chase Bank, N.A.*, Civ.Act. No. 10-10380-RGS, 2010 WL 4825632, at *7 (D.Mass. Nov. 24, 2010).