# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WAYNE J. ADAMS and TERRI L. ADAMS    ) | |
| ) | |
| Plaintiffs,    ) | |
| ) | |
| v.    ) | **CIVIL ACTION** |
| ) | **NO. 4:16-40153-TSH** |
| WELLS FARGO BANK, N.A. as Trustee for    ) | |
| Pooling and Servicing Agreement Option One    ) | |
| Mortgage Loan Trust 2004-1 Asset-Backed    ) | |
| Certificates, Series 2004-1 and Wells Fargo    ) | |
| Bank, N.A. as Trustee for Option One Mortgage    ) | |
| Loan Trust 2004-1, Asset-Backed Certificates,    ) | |
| Series 2004-1; and    ) | |
| ) | |
| OCWEN LOAN SERVICING, LLC, as alleged    ) | |
| Servicing Agent, Attorney in Fact, or otherwise    ) | |
| on behalf of Wells Fargo Bank, N.A.    ) | |
| ) | |
| Defendants.    ) | |
| _____) | |

## REPORT AND RECOMMENDATION

**August 21, 2017**

Hennessy, M.J.

By Order of Reference dated April 14, 2017 (Docket #26), and pursuant to 28 U.S.C. § 636(b)(1)(A), this matter was referred to me for a ruling on Defendant Wells Fargo Bank's ("Wells Fargo") and Defendant Ocwen Loan Servicing's ("Ocwen") joint Motion to Dismiss Plaintiffs Wayne J. Adams and Terri L. Adams's Complaint for Failure to State a Claim (Docket #13). Plaintiffs filed an opposition to Defendants' Motion to Dismiss. (Docket #19). On July 6, 2017, a motion hearing was held. (Docket #28). Supplemental briefs were filed on July 31

and August 4, 2017. (Docket #33 and #35). This matter is now ripe for adjudication. In consideration of the foregoing submissions and for the reasons that follow, I recommend that Defendants' Motion to Dismiss (Docket #13) be GRANTED and that Plaintiffs' amended complaint be dismissed WITH PREJUDICE.

I.      PROCEDURAL BACKGROUND

Plaintiffs initiated this action by filing a complaint on October 25, 2016. (Docket #2). Defendants jointly filed a Motion to Dismiss on November 22, 2016. (Docket #13). Plaintiffs thereafter filed a Motion to Amend Complaint on January 19, 2017, (Docket #21), which I granted at the motion hearing on July 6, 2017, (Docket #28 and #29). Plaintiffs' amended complaint is therefore the operative complaint here. Although Defendants' Motion to Dismiss predates the amended complaint, (see Docket #13), Defendants maintained at the motion hearing that their motion is not mooted by, and need not be supplemented as a result of, the amended complaint. Initially, I agreed to consider the Motion to Dismiss relative to the amended complaint, but after further assessing the numerous new and supplemented allegations in the amended complaint, (compare Docket #2 with Docket #21-1), I set forth a briefing schedule to address what effect, if any, these new allegations have on the Rule 12(b)(6) motion. (Docket #32). Defendants and Plaintiffs filed supplemental briefing on July 31 and August 4, 2017, respectively. (Docket #33 and #35). Defendants' motion is therefore assessed against the well-pleaded allegations in Plaintiffs' amended complaint and the materials attached thereto, coupled with the supplemental briefing filed by the parties.

## II.   FACTUAL BACKGROUND[1]

On December 3, 1999, Plaintiffs, who are husband and wife, became first-time homebuyers when they purchased an approximately 44-acre farm at 57 Fitchburg Road in Ashburnham, Massachusetts from Wesley and Phyllis Price. (Docket #21-1 at ¶ 1; Docket #21-2 at 4). In May of 2000, Plaintiffs learned that thousands of yards of contaminated fill had been used in the construction of the recently installed septic system, and in 2001 filed suit against the Prices, among others. (Id. at ¶ 2). The Plaintiffs also learned of drinking well water contamination that had been affecting nearby properties since 1997. (Id.). The Massachusetts Department of Environmental Protection determined that Boutwell's Garage Citgo station, which abutted Plaintiffs' property, was the source of the contamination. (Id.). In January of 2003, methyl tertiary-butyl ether ("MTBE"), a toxic gasoline additive, was discovered in Plaintiffs' drinking well water. (Id.).

On October 31, 2003, Plaintiffs obtained a standard uninsured $225,000 adjustable rate mortgage from Option One with a two-year fixed interest rate, and a 28-year adjustable interest rate. (Id. at ¶¶ 3, 9). Plaintiffs timely made their mortgage payments through December 15, 2004, after which they stopped making payments. (Id. at ¶ 5). On January 1, 2005, Plaintiffs exercised what they refer to as their non-judicial right to "Null & Void" the mortgage with Option One as a result of inadequate disclosures which are "required by Federal Toxic Tort Law and Toxic Predatory Lending." (Id.). Plaintiffs assert that the disclosures Option One failed to make "would have altered the[ir] decision of buying and borrowing . . . ." (Id.). Plaintiffs further assert that Option One, which they refer to as their "partner in the loan," had a duty to protect their security interest in the property by ensuring that the third parties responsible for the contamination—that

---

[1] The facts are taken from the factual allegations in the amended complaint (Docket #21-1), and are generally accepted as true for purposes of this recommendation. Trans-Spec Truck v. Caterpillar, 524 F.3d 315, 321 (1st Cir. 2008). Courts, however, are to "ignore statements in the complaint that simply offer legal labels and conclusions." Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012).

is, Boutwell's Garage and Citgo, among others—were held accountable for the contamination and the resulting cleanup. (Id.).

Plaintiffs served Option One with notice of the "Null & Void" in or about early February of 2005. (Id. at ¶ 6). Soon after receiving notice of the "Null & Void," on February 3, 2005, Option One sent Plaintiffs a notice of default that stated in relevant part: "[i]f Option One is not in possession of the amount that is necessary to cure the default within 30 days of the date of this notice, Option One will accelerate the Loan balance and proceed with foreclosure." (Id. at ¶ 7).

Plaintiffs first learned that Wells Fargo was the purported new holder of their mortgage on August 9, 2006 when the Korde & Associates law firm ("Korde") sent Plaintiffs a letter on behalf of Wells Fargo, which indicated Wells Fargo's intent to foreclose. (Id. at ¶ 9). Korde then initiated a foreclosure action on August 11, 2006. (Id. at ¶ 10). In response to the foreclosure complaint, on September 20, 2006, Plaintiffs filed a complaint in Worcester Superior Court, seeking to enjoin the foreclosure and seeking other relief. (Id. at ¶ 11; see Docket #14-5). Plaintiffs' complaint seeking injunctive and other relief was dismissed on March 16, 2007. (Docket #14-7). In that same Order dismissing the action, the Superior Court also denied Plaintiffs' request seeking a declaratory judgment that the mortgage and note were null and void. (Docket #14-6 at 3 n.3, 9 n.5).

While the first foreclosure action was allegedly still pending, Korde recorded an assignment of the mortgage from Option One to Wells Fargo as trustee. (Id. at ¶ 12). Plaintiffs contend that that assignment, despite being notarized, actually took place in 2008 but was "back-dated to August 21, 2006." (See id.; Docket #21-2 at 58-59). In any case, the notarization date of the assignment postdates the August 9, 2006 letter to Plaintiffs stating that Wells Fargo

was the then-current holder of the mortgage, and also postdates the first foreclosure complaint. (Compare Docket #21-2 at 56 with Docket #21-2 at 58).

On December 15, 2009, with regard to the August 11, 2006 foreclosure complaint, Judge Trombly of the Land Court issued a Show Cause Order, requiring Wells Fargo to submit documentation showing that it held the mortgage and therefore possessed standing to foreclose. (Docket #21-1 at ¶ 13; Docket #21-2 at 63). Wells Fargo, apparently, did not comply with that Order and, according to the Plaintiffs, the first foreclosure action filed in 2006 was subsequently dismissed. (Docket #21-1 at ¶ 13).

On November 21, 2012, Ablitt Scofield, P.C., on behalf of Wells Fargo, initiated a second foreclosure action. (Id. at ¶ 16). In 2013, during the pendency of that foreclosure action, Defendant Ocwen began sending Plaintiffs debt collection notices. (Id. at ¶ 17). Debt collection efforts persisted despite Plaintiffs telling Defendant Ocwen that Plaintiffs unilaterally declared the mortgage "Null & Void." (Id. at ¶ 17; see also id. at ¶ 18 ("[T]here is no alleged debt for Adams' 'Null & Void' mortgage . . . .").) In 2015, Defendant Ocwen sent Plaintiffs a notice stating that they had 150 days to cure the mortgage default resulting from delinquent mortgage payments spanning from January 1, 2005 to the notice date. (Id. at ¶ 19).

On October 14, 2015, Korde, on behalf of Wells Fargo, initiated a third foreclosure action. (Id. at ¶ 21). Plaintiffs contend that the second foreclosure action was still pending when the third foreclosure complaint was filed, and thus the second foreclosure complaint was subsequently dismissed. (Id.).

From December of 2015 through April of 2016, Plaintiffs received various communications from Defendant Ocwen. (Id. at ¶¶ 23, 25). On December 2, 2015, Defendant Ocwen sent Plaintiffs an "Identity Theft" notice, requesting that Plaintiffs sign an "ID Theft

Affidavit." (Id. at ¶ 23). In January through April of 2016, Ocwen sent at least five communications: (1) an "urgent request" for Plaintiffs' taxpayer identification numbers; (2) a letter requesting Plaintiffs sign an agreement to establish an escrow/impoundment account; (3) an approval letter for the Plaintiffs to make payments pursuant to the Home Affordable Modification Program; (4) a "second and final notice" asking Plaintiffs to sign the escrow/impoundment account agreement; and (5) a "final notice" regarding the requested establishment of an escrow/impoundment account. (Id. at ¶ 25).

On May 13, 2016, after Plaintiffs unsuccessfully attempted to file a Motion to Dismiss the Third Foreclosure, Chief Judge of the Land Court Judith C. Cutler entered a judgment in favor of Wells Fargo, concluding that Plaintiffs were not entitled to relief pursuant to the Servicemembers Civil Relief Act, 50 U.S.C. §§ 3901-4043. (Id. at ¶ 27).

Following that determination, on June 9, 2016, Ocwen sent Plaintiffs a "Notice of Foreclosure Postponement for Loss Mitigation Evaluation," specifying a new foreclosure date of August 8, 2016. (Id. at ¶ 28). Plaintiffs again received a "Notice of Foreclosure Postponement" on September 14, 2016, indicating a new foreclosure date of October 31, 2016. (Id.). On September 29, 2016, Korde sent a "Deficiency Notice" to Plaintiffs, attempting the collect on Plaintiffs' debt and asserting their intention to foreclosure on the property on October 31, 2016. (Id. at ¶ 29). Ocwen continued to send statements and delinquency notices to Plaintiffs, one of which was sent on December 2, 2016. (Id. ¶ 28).

Wells Fargo conducted what Plaintiffs allege to be an unlawful foreclosure auction of the property on December 9, 2016. (Id. at ¶ 29). Thereafter, Ocwen sent two additional letters to Plaintiffs dated December 15 and 17, 2016 regarding the alleged debt pursuant to the 2003 mortgage. (Id. at ¶ 31).

III.    STANDARD

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)). Materials attached to a complaint, or incorporated by reference, are a part of the pleading itself, and the Court may consider them on a motion to dismiss. Trans-Spec Truck Serv. v. Caterpillar, 524 F.3d 315, 321 (1st Cir. 2008). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and alterations omitted). "[L]egal labels and conclusions," however, are to be "isolate[d] and ignore[d]." Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012); cf. Haag v. United States, 736 F.3d 66, 69 (1st Cir. 2013) ("Although we view all well-pleaded facts in the light most favorable to the non-moving party, 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'") (quoting Iqbal, 556 U.S. at 678).

A court must apply "an even more liberal standard" where, as here, the plaintiffs are proceeding pro se. Gibbs v. SLM Corp., 336 F. Supp. 2d 1, 3 (D. Mass. 2004). To that end,

"[p]ro se pleadings are construed liberally, to avoid inappropriately stringent rules and unnecessary dismissals." Bourne v. Arruda, No. 10-cv-393-LM, 2011 U.S. Dist. LEXIS 62332, at *8 (D.N.H. June 10, 2011). This is not to suggest, however, that pro se litigants are not held to any standard at all. See Solomon v. Khoury, No. 16-10176, 2017 U.S. Dist. LEXIS 20670, at *9 (D. Mass. Feb. 13, 2017) ("While the 'First Circuit holds a pro se litigant to a standard of pleading less stringent than that for lawyers . . . this cannot be taken to mean that pro se complaints are held to no standard at all.'") (quoting Green v. Massachusetts, 108 F.R.D. 217, 218 (D. Mass. 1985)).

IV.     ANALYSIS

In their amended complaint, Plaintiffs assert the following claims: fraud (Count I); civil conspiracy (Count II); illegal debt collection by Defendant Ocwen (Count III); intentional infliction of emotional distress (Count IV); slander to title (Count V); unjust enrichment (Count VI); and unlawful foreclosure (Count VII). (See Docket #21-1). I recommend that the Court dismiss Plaintiffs' amended complaint.[2]

Before addressing these claims, I note that, as a preliminary matter, all of Plaintiffs' claims flow from the central contention that Plaintiffs declared their mortgage "Null & Void." Plaintiffs make this clear in their introductory paragraph, stating that: "Plaintiffs' position is that they made the first non-judicial move in 2005 when they 'Null & Void' [sic] the mortgage with the original lender and servicer, Option One Mortgage Corporation, based on Federal Toxic Tort Law, Toxic Predatory Lending, and Fraud; thereforeafter [sic] no mortgage contract existed and there was no valid assignment in 2006 and 2012 to Wells Fargo Bank, N.A., who was never a mortgagee." (Docket #21-1 at 1). After their purported unilateral rescission of the contract, Plaintiffs

---

[2] Defendants make a cursory argument that Plaintiffs' complaint is barred by the doctrine of res judicata. (Docket #14 at 12-14). Because I recommend that the Plaintiffs' amended complaint be dismissed with prejudice, I do not address this argument here.

admittedly stopped making payments on the mortgage, despite continuing to retain the benefit of the mortgage. (Docket #21-1 at ¶ 5). In broad strokes, Plaintiffs' theory of their complaint is, in essence, that because Plaintiffs unilaterally rescinded the mortgage by declaring it "Null & Void," no debt, mortgage, or note survives rescission; thus, any and all actions taken by Defendants in connection with that "Null & Void" debt—including foreclosure, debt collection activity, and even assignment of the mortgage—were unlawful and/or null.

Even applying the more liberal pleading standard for pro se plaintiffs, I conclude that the Plaintiffs here have failed to aver sufficient allegations from which the Court can determine or infer any plausible legal or factual basis to support Plaintiffs' assertion that they effectively nulled and voided their mortgage and its accompanying note. That failure, I find, is fatal to the sufficiency of Plaintiffs' amended complaint.

Plaintiffs make a conclusory allegation that they were able to null and void their agreement "due to lack of disclosures required by Federal Toxic Tort Law and Toxic Predatory Lending; said disclosures would have altered [Plaintiffs'] decision of buying and borrowing . . . ." (Docket #21-1 ¶ 5). Plaintiffs, however, do not cite any "Federal Toxic Tort" laws or any "Toxic Predatory Lending" laws at all, let alone laws giving rise to the ability to unilaterally null and void a contract while nonetheless retaining its benefit. (See Docket #21-1). Moreover, despite filing over 100 pages of exhibits accompanying Plaintiffs' twenty-six page amended complaint, Plaintiffs curiously do not attach as an exhibit the notice of their "Null & Void," nor do they incorporate by reference the legal provisions upon which that "Null & Void" might have relied. (See Docket #21).

To the extent that Plaintiffs are relying on alleged fraud, Plaintiffs also do not detail any disclosures that allegedly were or were not made.[3] (See Docket #21-1). Presumably, Plaintiffs complain that Wells Fargo, as a successor of the original mortgagee by way of assignment, did not disclose that the property was contaminated. However, Plaintiffs make no allegation that Option One, as original mortgagee in 2003, or that Wells Fargo, as the assignee sometime thereafter, had any knowledge that the property was contaminated before providing Plaintiffs the mortgage. (See id.).

Such an allegation would, in fact, directly contradict the facts as Plaintiffs have alleged them because Plaintiffs concede that they learned of the contamination in May of 2000—that is, three years before obtaining the mortgage at issue here. (Compare Docket #21-1 at ¶ 2) ("In May 2000, [Plaintiffs] discovered that thousands of yards of contaminated fill had been intentionally put into the newly installed septic system . . . [and] in January 2003, MTBE (methyl tertiary-butyl ether), a toxic gasoline chemical, was discovered in [Plaintiffs'] drinking well water . . . .") with Docket #21-1 at ¶ 3 ("On October 31, 2003 . . . [Plaintiffs] were referred to [a] mortgage broker . . . who brokered a mortgage for [Plaintiffs] with Option One Mortgage Corporation . . . ."). Plaintiffs' contention that they would not have borrowed from Option One or Wells Fargo had they known about the contamination therefore defies logic where Plaintiffs admittedly knew of the contamination before securing the 2003 mortgage. (See Docket #21-1 at ¶ 5). In fact, Plaintiffs stated at the motion hearing on July 6, 2017 that the purpose of the 2003 mortgage at issue here was to finance a then-ongoing lawsuit against the Prices—the individuals

---

[3] To the extent that Plaintiffs allege that Wells Fargo or Option One had a duty to inspect the property for contamination, Plaintiffs' argument is unpersuasive because no fiduciary relationship exists in Massachusetts between a borrower and a lender. See Dewayne v. First Nat'l Bank of Ariz., No. 15-CV-14245-IT, 2016 U.S. Dist. LEXIS 156320, at *6-7 (D. Mass. Nov. 10, 2016) ("Even if Plaintiff was the borrower, his breach of fiduciary duty claim would fail under Massachusetts law, as the relationship between a lender and a borrower, without more, does not establish a fiduciary relationship.") (citing FAMM Steel, Inc. v. Soverign Bank, 571 F.3d 93, 102 (1st Cir. 2009)).

who sold the property to Plaintiffs—for not disclosing the contamination before the 1999 sale.[4]

See Mot. Hr'g Tr. at 4; (Docket #30 at 4). Thus, Plaintiffs have failed to sufficiently allege (1) that Option One or Wells Fargo knew of the contamination before providing the mortgage; (2) that even if they knew, Option One or Wells Fargo had any affirmative duty as a lender (and not a seller) to disclose that contamination; and (3) how the Plaintiffs' decision to buy or borrow would have been altered when Plaintiffs admittedly knew of the property contamination in 2003 when they obtained the mortgage.

Indeed, these inconsistencies echo the concerns outlined by Judge Hillman in his Order denying Plaintiffs' emergency motion seeking a temporary restraining order, in which he detailed the following:

> Plaintiffs continually reference the fact that they declared the mortgage and loan "Null & Void." However, they have not cited to any legal authority . . . which would give them a right to unilaterally rescind the loan (and keep the money). Moreover, the basis for their unilateral rescission of the loan is alleged to be Option One's lack of disclosures required by "Federal Toxic Tort Law and Toxic Predatory Lending," which, if made, would have altered their decision in regards to "buying and borrowing." Plaintiffs have not identified what, if any, disclosures Option One failed to make. Plaintiffs have also failed to cite to any statute or regulation which . . . would have required Option One to make any disclosures regarding any environmental problems before accepting the Property as security for the loan. Even if I assume that Option One had such an obligation, (1) Plaintiffs have not alleged that Option One was aware of the alleged contamination; and (2) Plaintiffs own factual allegations make clear that they were independently aware of the contamination when they obtained the loan. Additionally, [to] the extent that the Plaintiffs' allegations can be read to assert a claim for predatory lending, the factual allegations do not support a finding that Option One made the loan knowing that because [of] the environmental contamination, they would be unable to repay it. Plaintiffs also suggest that by giving them a loan and accepting the Property as security, Option One (and presumably its assignee, Wells Fargo) became "partners" with them and had a duty to protect their investment by pursuing those third parties responsible for the contamination and clean-up of the Plaintiffs' drinking water. However, Plaintiffs have not cited any authority for their extraordinary proposition that a mortgagee has a legal *obligation* to step in and pursue such claims.

---

[4] The record elsewhere, as incorporated by reference, also makes this clear. (See Docket #14-6 at 4) (Superior Court order stating that "the plaintiffs refinanced their mortgage [in 2003] to pay for the litigation against the Prices.").

(Docket #7 at 8-9).  Despite having the benefit of Judge Hillman's Order on October 26, 2016, which assessed the many defects in Plaintiffs' allegation that they declared the mortgage "Null & Void," Plaintiffs have failed to meaningfully address any of these concerns in their amended complaint filed three months later.[5]

Plaintiffs were given yet another opportunity to outline the legal basis for their "Null & Void" during the motion hearing before me on July 6, 2017.  (Docket #28).  At that hearing, I asked Plaintiffs on several occasions to detail the legal mechanism by which a party can unilaterally rescind a contract and keep the benefit.  See Mot. Hr'g Tr. at 11 (the Court states, "My question is–I'm trying to understand the legal mechanism. . . . What does it mean to say 'I null and voided the contract'?").  During that hearing, the Court invited Plaintiffs on at least three more occasions to articulate a legal basis or authority to unilaterally declare the mortgage and note null and void, and in each instance Plaintiffs failed to do so.  See, e.g., Mot. Hr'g Tr. at 37; Mot. Hr'g Tr. at 39; Mot. Hr'g Tr. at 41.

Plaintiffs, at one point, responded by analogizing this case to a marriage annulment. See Mot. Hr'g Tr. at 44 ("[T]he best legal alignment I could find is an annulment of a marriage, so null and void [is] similar to the practice of an annulment of a marriage.").  Building on this, perhaps an appropriate commercial analogy is the automobile lemon law.  In either case, a party to a contract—marriage or car purchase—generally receives something other than for what the party bargained: a spouse who may be someone other than what the party was led to believe; a car

---

[5] Beyond this, as early as March of 2007 Superior Court Judge Lemire's Order, which Plaintiffs have incorporated by reference, casted serious doubt on the legal efficacy of Plaintiffs' purported "Null & Void" such that Judge Lemire summarily denied Plaintiffs' claim seeking a declaratory judgment that the mortgage and note are null and void.  (See Docket #14-6 at 3 n.3, 9 n.5); (see also Docket #21-1 at ¶ 11) (incorporating Judge Lemire's decision by reference by stating that "in 2006 [Plaintiffs] filed a Verified Complaint for Injunctive and Other Equitable Relief in Worcester Superior Court, Civil Action No. 2006-1922C, *Adams v. Option One Mortgage Corporation*"); cf. Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008) (court may consider matters of public record, including court documents, in deciding a motion to dismiss).

which fails to perform as represented.  In either case, what triggers the right to avoid the contract is a material misrepresentation of some kind.  <u>NPS LLC v. Ambac Assur. Corp.</u>, 706 F. Supp. 2d 162, 170 (D. Mass. 2010) ("'If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient.'") (quoting Restatement (Second) of Contracts § 164 (1979)).  The spouse may have failed to disclose that he or she is already married, has children, suffers from dependence on alcohol or drugs, or is about to serve a long jail sentence.  The auto dealer may have failed to discover and disclose problems that adversely affect use, enjoyment, or value of the car.  <u>See</u> Mass. Gen. Laws. ch. 90, § 7N.

Here, Plaintiffs allege that they received something other than what they bargained for: a home and property free from contamination.  Fair enough.  However—and here is where the analogy to marriage annulment or the lemon law breaks down—they seek to avoid a bargain separate from their purchase of a home and property that are free from contamination.  They are not seeking to avoid their purchase of the home and property.  They are seeking to avoid a contract that they made some four years <u>after</u> the purchase of the home and property, and with a bank who was not a party to their purchase and sale of property—that is, Option One, which loaned them money in 2003 on the condition that Plaintiffs pledge their property (contaminated or not) to secure the loan.

Moreover, making the marriage annulment or lemon law analogy even less helpful, the amended complaint makes abundantly clear that when Plaintiffs entered into this separate contract with Option One and obtained this loan from Option One secured by their home and property (contaminated or not),  Plaintiffs already knew of this alleged material misrepresentation.  In other words, Plaintiffs cannot claim that they entered into the bargain with Option One without

knowledge of the contaminated condition of the property. (<u>See</u> Docket #21-1 at ¶ 2; Docket #21-2 at 3-8). Accordingly, insofar as their dealings with Option One are concerned, there is no material misrepresentation that caused Plaintiffs to enter into the bargain with Option One and hence that would trigger a right to avoid the obligation to pay the money it is undisputed Option One loaned to them: $225,000.

There is at least one other impediment to the Plaintiffs' right to exercise the power of avoiding a contract based on a material representation, even putting aside that fact that Option One did not sell them the homestead in 1999. I return to the marriage annulment and lemon law analogies. In the case of the marriage annulment, the party annulling or avoiding the marriage does not keep the benefits of the marriage. After the annulment, he or she may not ask the other to continue to carry out the obligations of marriage; he or she may not object if the other marries a third person. Similarly, by operation of the lemon law, receipt of a refund of the purchase price, or receipt of a replacement car is conditioned on the original "lemon" being returned. <u>See</u> Mass. Gen. Laws. ch. 90, § 7N ("In order to void a motor vehicle sale under this section the buyer shall, within fourteen days from the date of sale, deliver the motor vehicle to the seller . . . ."). Here, on the other hand, the Plaintiffs have kept the $225,000 principal and they have not made a monthly payment of principal and interest since December 2004. Yet over these last more than twelve years, they have continued to occupy the homestead. In other words, they have retained the benefit of the contract they allege that they have avoided.

Against this backdrop, I review below each of the claims in Plaintiffs' amended complaint. I recommend that the Court GRANT Defendants' Motion to Dismiss (Docket #13) and dismiss Plaintiffs' amended complaint WITH PREJUDICE.

A.     Fraud (Count I)

In Massachusetts, to state a claim for fraud a plaintiff must adequately aver that "(1) the defendant made a false representation of material fact, (2) with knowledge of its falsity, (3) for the purpose of inducing the plaintiff to act in reliance thereon, (4) the plaintiff relied upon the representation, and (5) the plaintiff acted to his detriment." Smith v. Jenkins, 626 F. Supp. 2d 155, 164-65 (D. Mass. 2009) (quoting Armstrong v. Rohm & Haas Co., Inc., 349 F. Supp. 2d 71, 81 (D. Mass. 2004)).

Although the instant claim is asserted under state law, the federal pleading rule outlined in Federal Rule of Civil Procedure 9(b) applies here.     Smith, 626 F. Supp. 2d at 165 n.8. Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  In that light, Rule 9(b) is an exception to the typical Rule 12(b)(6) standard whereby "a plaintiff is to be given the benefit of the doubt." Smith, 626 F. Supp. 2d at 165.   A claimant pleading fraud must identify "the who, what, where, and when of the allegedly false or fraudulent representation" to satisfy this heightened pleading standard.  Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004).

I recommend that the Court dismiss Count I because Plaintiffs' amended complaint does not satisfy the heightened pleading requirements of Rule 9(b).  Plaintiffs seem to allege multiple theories of fraud; none of which, however, are pled with sufficient particularity.  For instance, Plaintiffs allege that: "Defendants made false representations of material facts and knowingly engaged in false documentation practices for the purpose of inducing the plaintiffs to act to their injury, forcing plaintiffs to rely upon the representation, thereby inducing the plaintiffs to litigate

in reliance thereon, to the plaintiffs' detriment." (Docket #21-1 ¶ 33). As discussed at length supra, Plaintiffs have failed to aver "the who, what, where, and when of the allegedly false or fraudulent representation," Alternative Sys. Concepts, Inc., 374 F.3d at 29, or, insofar as the claim of fraud is addressed to Plaintiffs' allegations of misrepresentation in connection with contamination of the property, how Plaintiffs' reliance thereon could have been induced when they admittedly knew of the contamination in 2003. Additionally, Plaintiffs' other allegations tending to suggest false or misleading documentation also necessarily fail because those contentions flow from the idea that the documentation was false or misleading because no mortgage existed as a result of the "Null & Void"; however, Plaintiffs have not averred any plausible basis for the efficacy of their "Null & Void." Lastly, Plaintiffs must not have relied on any alleged false or misleading documentation because Plaintiffs have always maintained that any documentation in connection with the mortgage was inauthentic and/or fraudulent. Cf. Dewayne v. First Nat'l Bank of Ariz., No. 15-CV-14245-IT, 2016 U.S. Dist. LEXIS 156320, at *6 (D. Mass. Nov. 10, 2016) (granting motion to dismiss fraud claim because "Plaintiff fail[ed] to allege that Defendants made any statements to him, or that he relied on misrepresentations made by Defendants").

    B.    Civil Conspiracy (Count II)

    "Two types of civil conspiracy exist under Massachusetts law. The first 'requires proof of coercion; the second requires proof of a common plan to commit a tortious act.'" Fiorillo v. Winiker, 85 F. Supp. 3d 565, 576 (D. Mass. 2015) (quoting Kurker v. Hill, 44 Mass. App. Ct. 184, 188 (1998)). "Under the first type of conspiracy, a plaintiff 'must allege that defendants, acting in unison, had some peculiar power of coercion over plaintiff that they would not have had if they had been acting independently.'" Fiorillo, 85 F. Supp. 3d at 576 (quoting Aetna Cas. Sur. Co. v. P&B Autobody, 43 F.3d 1546, 1563 (1st Cir. 1994)). "For the second type of conspiracy, the

plaintiff must allege 'first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement.'" Fiorillo, 85 F. Supp. 3d at 576 (quoting Aetna Cas. Sur. Co., 43 F.3d at 1564.

Plaintiffs have failed to sufficiently allege any form of civil conspiracy. Here, Plaintiffs contend, among other things, that "[t]ogether defendants' acts were meant to create the illusion of mortgagee status for Wells Fargo Bank, N.A. in order to conduct a non-judicial auction to deprive plaintiffs of their real property, with the knowledge that such assistance is contributing to a common tortious plan." (Docket #21-1 at ¶ 46). Plaintiffs also allege that evidence of an illicit agreement between Defendant Wells Fargo and Defendant Ocwen is evidenced by the fact that Defendant Ocwen sent various notices, like the 150-day right to cure, on Wells Fargo's behalf. (Id. at ¶ 45). Plaintiffs' claims are insufficient as to Count II because they are dependent on the notion that Plaintiffs' mortgage is "Null & Void" because, otherwise, there would be no "illusion"—to use Plaintiffs' term—of mortgagee status. There is also nothing inherently unlawful about an agreement between two commercial entities to use a servicing agent to attempt to collect a debt, even a disputed one. I therefore recommend Count II be dismissed.

     C.     Illegal Debt Collection by Defendant Ocwen (Count III)

Plaintiffs' third claim alleges various violations the Fair Debt Collection Practices Act, see 15 U.S.C. § 1692. Pursuant to that Act, a debt collector is proscribed from various debt collection practices, including: communicating with the consumer "at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer," 15 U.S.C. § 1692c(a)(1); "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," id. § 1692d; "us[ing]

any false, deceptive, or misleading representation or means in connection with the collection of any debt;" id. § 1692e; and "us[ing] unfair or unconscionable means to collect or attempt to collect any debt;" id. § 1692f. The Fair Debt Collection Practices Act also outlines numerous examples of specific conduct that violates its provisions. See 15 U.S.C. §§ 1692a-1692f.

Plaintiffs have failed to include sufficient allegations to make a claim for a violation of the Fair Debt Collection Practices Act (Count III). Here, Plaintiffs allege that Defendant Ocwen communicated with them "with the intent of collecting an alleged debt known to be 'Null & Void,' invalid and time-barred." (Docket #21-1 at ¶ 51). Plaintiffs also contend that Defendant Ocwen engaged in debt collection activity after the foreclosure sale. (Id. at ¶ 52). Because I conclude that Plaintiffs have failed to allege any plausible basis for the mortgage being null and void, their allegation that any attempt at the collection of that debt is inherently unlawful must fail. That same proposition undermines Plaintiffs' contention that certain debt collection practices were false and deceptive, because the principal basis for that allegation is that it is necessarily false and misleading to try to collect a debt which, they contend, does not exist. Where, as here, it is implausible that that debt does not exist, Plaintiffs' allegations are inadequate. Moreover, because Plaintiffs fail to aver that the proceeds from the foreclosure sale satisfied their outstanding debt even if their mortgage was not null and void, any debt collection activity occurring after the foreclosure sale would not be inappropriate because Plaintiffs concededly stopped making payments on their mortgage. Plaintiffs have not otherwise pleaded any facts sufficient to make a claim under other provisions of the Fair Debt Collection Practices Act. I recommend that the Court dismiss Count III.

D.      Intentional Infliction of Emotional Distress (Count IV)

To make a claim for intentional infliction of emotional distress, a plaintiff must show "(1) that [a defendant] intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." Polay v. McMahon, 468 Mass. 379, 385 (2014).

Plaintiffs contend that "Defendant Wells Fargo Bank, N.A.'s alleged illegal non-judicial foreclosure has caused plaintiffs to experience extreme mental anguish lasting over a decade: feeling angst, anxiety about the living situation, toxic fear, distress because each day begins and ends in toxic fear, the foreclosure has triggered fears of ending up on the street homeless, humiliation, embarrassment, and grief contemplating the loss of the family farm and home, shock and trauma, as first-time homebuyers plaintiffs' 'American Dream' has become a toxic predatory nightmare." (Docket #21-1 at ¶ 58). As with the other counts in their complaint, the basis for Plaintiffs' intentional infliction of emotional distress claim is the fact that Defendants have allegedly illegally conducted a foreclosure sale despite the mortgage being "Null & Void." Because the "Null & Void" allegation is factually and legally implausible, I recommend that the Court dismiss Count IV.

E.      Slander to Title (Count V)

Plaintiffs contend that Defendants have slandered the title to their home by recording various documents, assignments, and a foreclosure deed despite the mortgage being "Null & Void." (Docket #21-1 ¶¶ 63-65). Because the propriety of an assignment or foreclosure is dependent on the contention that the mortgage is "Null & Void," I recommend that Count V be dismissed.

F.      Unjust Enrichment (Count VI)

To state a claim for unjust enrichment, a plaintiff must show "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention of the benefit by the defendant under circumstances which make such acceptance or retention inequitable." Stevens v. Thacker, 550 F. Supp. 2d 161, 165 (D. Mass. 2008). "Massachusetts courts emphasize the primacy of equitable concerns in a finding of unjust enrichment or quasi-contract: '[C]onsidertions [sic] of equity and morality play a large part in constructing a quasi contract.'" Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009) (quoting Salamon v. Terra, 477 N.E.2d 1029, 1031 (Mass. 1985)).

Plaintiffs allege that "[i]t was the plaintiffs who spent exhaustive hours trying to remedy the contamination issues resulting in the extension of the town water supply to the affected neighborhood properties in June 2007.  It would be unreasonable, inequitable, and immoral to expect the plaintiffs to shoulder the entire burden of cleanup of the contamination, and unconscionable and unethical to allow these defendants to profit at the expense of plaintiffs' years of unpaid hard work." (Docket #21-1 at ¶ 68).  Focusing on considerations of equity and morality, coupled with the inefficacy of Plaintiffs' "Null & Void," Plaintiffs have failed to show an inequitable retention of a benefit where Defendants foreclosed on a mortgage after Plaintiffs had not made a mortgage payment in twelve years, and after Plaintiffs admittedly retained the benefit of that mortgage for the entirety of that duration.  I recommend the dismissal of Count VI.

G.      Unlawful Foreclosure (Count VII)

A foreclosure must comport with the provisions outlined in Mass. Gen. Laws. ch. 244, §§ 1-40.  Plaintiffs contend that the foreclosure that took place was unlawful because they declared the mortgage "Null & Void" and because the foreclosure was done without judicial authorization.

(Docket #21-1 at ¶¶ 71, 73).  As to the former, for all the reasons discussed above I find this contention is without merit.  As to the latter, Plaintiffs' 2003 mortgage agreement, which is attached to their amended complaint as Exhibit B, <u>see</u> Docket #21-2 at 50, unequivocally provides the authority to invoke the statutory power of sale upon default, and Plaintiffs concede not making payments and having a judgment entered against them finding that they are not entitled to relief pursuant to the Servicemembers Civil Relief Act, 50 U.S.C. §§ 3901-4043.[6]  (Docket #21-1 at ¶ 27).  I therefore recommend that the Court dismiss Count VII.

V.      CONCLUSION

For the foregoing reasons, I recommend that the Court GRANT Defendants' Motion to Dismiss (Docket #13) and DISMISS Plaintiffs' amended complaint (Docket #21-1) WITH PREJUDICE.[7]


                                        /s/ David H. Hennessy
                                        David H. Hennessy
                                        U.S. Magistrate Judge

---

[6]  Additionally, to the extent that Plaintiffs make an argument that entering the property to conduct a foreclosure constituted an unlawful trespass, this claim also necessarily flows from the central contention that the mortgage had been declared "Null & Void."  Plaintiffs, moreover, direct this Court to no authority to support the proposition that a no trespass notice trumps a party's power to peaceably enter a property while accompanied by a police officer to record a certificate of entry.  Indeed, Sergeant Conrad's police report attached to Plaintiffs' amended complaint indicates: "[the Plaintiffs] were aware of the reason for my presence. I advised [Plaintiffs] that the parties involved in the auction would not come onto their property past the location of a municipal utility pole. . . . The 'auction' lasted approximately 5 minutes and was done without any conflict between the Adam's [sic] and those present." (Docket #21-2 at 108).

[7]  The parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within 14 days of receipt of this Report and Recommendation.  The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72(b)(2).  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See <u>Keating v. Sec'y of Health & Hum. Servs.</u>, 848 F.2d 271, 275 (1st Cir. 1988); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980); <u>United States v. Vega</u>, 678 F.2d 376, 378-79 (1st Cir. 1982); <u>Scott v. Schweiker</u>, 702 F.2d 13, 14 (1st Cir. 1983); <u>see also</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).